| | |
|---|---|
| JENNIFER PIETA,<br><br>Plaintiff,<br><br>vs.<br><br>PENN MEDICINE PRINCETON HEALTH,<br><br>Defendant. | IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>CIVIL ACTION<br><br>**JURY TRIAL DEMANDED** |

### Complaint

Plaintiff Jennifer Pieta ("Plaintiff" or "Ms. Pieta"), by and through her counsel, complain against Defendant, Penn Medicine Princeton Health ("the Hospital" or "Defendant") as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over all claims under Title VII pursuant to 28 U.S.C. Section 1331.

2. This Court has supplemental jurisdiction over Plaintiff's claim under the New Jersey Law Against Discrimination pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. Section 1391(b) because Defendant is located in this District and because a substantial part of the events giving rise the claim occurred in this District.

### PARTIES

4. Defendant Penn Medicine Princeton Health is a Hospital located at 1 Plainsboro Road, Plainsboro, New Jersey.

5. Plaintiff Jennifer Pieta is an operating room nurse who

was employed by Defendant from May 2020 through August 31, 2021.

## Factual Allegations

6. Ms. Pieta is an operating room nurse.

7. In March 2020, just as covid was hitting New Jersey, Ms. Pieta was interviewed by Penn Medicine Princeton Health ("the Hospital") to fill a position in the Hospital's Operating Room. Ms. Pieta was interviewed by Linda Vasquez, the manager for ambulatory services. Ms. Vasquez told Ms. Pieta that she wanted to hire her, and Ms. Pieta was hired. Ms. Vasquez became Ms. Pieta's immediate supervisor at the Hospital.

8. The Hospital sent Ms. Pieta the information concerning her employee orientation.

9. Ms. Pieta began working at the Hospital in May 2020. Her schedule was given to her by the hospital. She worked ten hour shifts four days a week through her entire time working at the Hospital. The Hospital set her schedule. Occasionally, her supervisor would ask Ms. Pieta if she wanted to work a fifth day and sometimes Ms. Pieta did.

10. Upon hiring, Ms. Pieta spent two days in orientation for new employees. She was educated on Hospital policy and procedure, was given a badge that gave her access to all areas of the Hospital, was given a Hospital email address,

was given an onboarding gift bag, was assigned a locker with her name, and received a sticker for her car so she could park in the employee parking lot.

11. After Ms. Pieta went through orientation, she was shown the operating room area of the Hospital where she would be working. Ms. Pieta worked with the same people every day.

12. During her time working at the Hospital, Ms. Pieta reported to work around 6:45 am. She parked in the employee parking lot, entered the Hospital through the employee entrance, reported to Hospital security and showed them her employee badge, and proceeded to the operating room where she worked. Once there, she would change into her scrubs, which were provided by the hospital, put her belongings in her assigned locker, and gathered for the "morning huddle" in front of the bulletin board.

13. All employees and staff were required to attend the daily board meeting at promptly 6:55 a.m. Ms. Pieta and other workers were regularly warned that they must be punctual to this meeting. At the board meeting, Ms. Pieta and other workers were told what their work assignment was that day.

14. Throughout Ms. Pieta's time working at the Hospital, she worked with the same group of people every day. It was very stable, despite covid, with little turnover or change of staff.

15. In addition to the morning board meeting, Ms. Pieta was required to attend a staff education session once a week.
16. Ms. Pieta worked in the hospital under pandemic conditions for 16 months.
17. On May 19, 2021 Penn Medicine Princeton Health announced that everyone who worked there was required to take an emergency covid vaccine within three months, by August 31, 2021.
18. Ms. Pieta did not want to take the emergency vaccine. Her sincerely held religious beliefs forbid her from taking any of the emergency vaccines.
19. Ms. Pieta learned about the mandate from an email that was sent to her hospital email address.
20. Ms. Pieta's manager came and told her that the hospital was giving exemptions. Ms. Pieta found that the request for a religious exemption had been sent to her hospital email by the Hospital. She downloaded the religious exemption form, filled it out, and brought it to the Hospital's human resources department. Then, she emailed human resources confirming that she had delivered the form to the human resources department.
21. Human resources emailed Ms. Pieta back and told her that the responsibility for evaluating and approving her exemption rested with the employment agency that had

connected her with the Hospital, Accountable Healthcare Staffing ("Accountable").

22. Ms. Pieta reached out to Accountable to determine whether they would approve her exemption request. Accountable told her that they had approved it.

23. The Hospital, Accountable, Ms. Pieta, and another entity, Symmetry MSP, went back and forth over which entity was responsible for evaluating and approving Ms. Pieta's exemption request.

24. Ultimately, the Hospital determined that it had the responsibility of determining whether Ms. Pieta's request for accommodation must be granted. It then took the position that the Hospital did not even need to consider Ms. Pieta's accommodation request because the Hospital decided that Ms. Pieta did not fit the definition of "employee" under Title VII. Consequently, the Hospital decided it had no duty to accommodate Ms. Pieta's religious beliefs.

25. The Hospital felt it could take this position because even though the Hospital controlled every aspect of Ms. Pieta's work and even though Ms. Pieta's work was exactly the same as every other nurse in the operating room, the formal relationship between Ms. Pieta and the Hospital was separated by the artifice of a staffing agency,

Accountable, and Symmetry MSP, which interacts with staffing agencies on the Hospitals behalf. This artifice allowed the Hospital to have an employee in every way, but to avoid taxes and discrimination laws that clearly apply to workers employed directly by the Hospital.

26. Thus the manner in which Ms. Pieta was employed was thus: The Hospital asked Symmetry MSP to find a nurse. Symmetry MSP contacted Accountable and Accountable put the Hospital in contact with Ms. Pieta and Accountable paid Ms. Pieta.

27. The result is that Ms. Pieta was functionally an employee of the Hospital, which controlled all of her work, but Accountable pays Ms. Pieta.

## CAUSES OF ACTION

### COUNT ONE

### TITLE VII- RELIGIOUS DISCRIMINATION- FAILURE TO ACCOMODATE

28. Plaintiff repeats and realleges each of the preceding paragraphs.

29. Ms. Pieta was an employee of the Hospital.

30. The Hospital put a policy in place requiring employees to take an emergency vaccine.

31. Ms. Pieta's sincerely held religious beliefs forbid her from taking the emergency vaccine and the Hospital was made aware of this.

32. Ms. Pietta was separated from her employment because her religious beliefs prevented her from taking the emergency vaccine and the Hospital failed to accommodate her.

33. The Hospital could have accommodated her without any undue burden, which is proven by the fact that Ms. Pieta had already worked through covid for 16 months without taking the emergency vaccine.

34. Upon information and belief, Ms. Pieta was replaced with a travel nurse who did not hold religious beliefs that prevented him or her from taking the emergency vaccine.

35. As a result of the Hospital's failure to accommodate Ms. Pieta's religious beliefs, Ms. Pieta has suffered consequential and emotional damages.

### COUNT TWO

### TITLE VII- RELIGIOUS DISCRIMINATION- DISPARATE TREATEMENT

36. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth at length herein.

37. Ms. Pieta is a member of a protected class; specifically she is a Christian whose religious beliefs forbade her from taking an emergency covid vaccine.

38. Ms. Pieta's job performance was excellent and she was told that if she violated her religious beliefs and took the emergency vaccine that she would keep her job and that

her pay would be increased.

39. Ms. Pieta was separated from her job because she could not take the emergency vaccine.

40. Ms. Pieta was treated differently than similarly situated nurses who did not hold religious beliefs that forbade them from taking the emergency vaccine.

41. Upon information and belief, Ms. Pieta was replaced with a travel nurse who did not hold religious beliefs that prevented him or her from taking the emergency vaccine.

42. As a result of the Hospital's disparate treatment of Ms. Pieta due to her religious beliefs, Ms. Pieta has suffered consequential and emotional damages.

## COUNT THREE

### TITLE VII- RELIGIOUS DISCRIMINATION- HARASSMENT

43. Plaintiff repeats and realleges each of the preceding paragraphs as if set forth at length herein.

44. Ms. Pieta was engaged in a protected activity when she requested a religious accommodation and when she refused to disobey her religious beliefs as the Hospital wished her to do.

45. Because Ms. Pieta stood firm by her religious beliefs, she was subjected to a significant campaign of harassment and pressure by Hospital employees to go against her religious beliefs and submit to vaccination.

46. As a result of the Hospital's harassment of Ms. Pieta due to her religious beliefs, Ms. Pieta has suffered consequential and emotional damages.

## COUNT THREE

### NEW JERSEY LAW AGAINST DISCRIMINATION

47. Plaintiff repeats and realleges each of the preceding paragraphs.

48. Plaintiff is protected from discrimination based on her religious beliefs under the New Jersey Law Against Discrimination.

49. In refusing to accommodate Ms. Pieta, harassing her to violate her religious beliefs, the Hospital violated the New Jersey Law Against Discrimination.

50. The NJ LAD prohibits an employer from imposing a condition on employment that would require a person to violate or forego a sincerely held religious belief without engaging in a *bona fide* effort to accommodate the employee's religious observance.

51. As a result of the Hospital's harassment of Ms. Pieta due to her creed, Ms. Pieta has suffered consequential and emotional damages.

## JURY DEMAND

Plaintiff demands a jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief:

52. Declare that Penn Medicine Princeton Health violated Title VII by failing to engage in an interactive process with Ms. Pieta to find a reasonable accommodation for her religious beliefs, creating and abetting an environment whereby other employees harassed Ms. Pieta and tried to entice her to stray from her sincerely held religious beliefs, failing to accommodate Ms. Pieta's religious beliefs, and separating Ms. Pieta from her employment;

53. Declare that Penn Medecine Princeton Health violated the New Jersey Law Against Discrimination by imposing a condition on employment that required Ms. Pieta to forgo her sincerely held religious beliefs without engaging in a *bonda fide* effort to accommodate her;

54. Award Ms. Pieta consequential damages;

55. Award Ms. Pieta pre-judgment and post-judgment interest;

56. Award Ms. Pieta punitive damages;

57. Award Ms. Pieta attorneys fees;

58. Grant any and all other such relief as this Court deems just and equitable.

Respectfully submitted,

Dated:   November 16, 2022

s/ Dana Wefer, Esq.

Law Offices of Dana Wefer, LLC
Dana Wefer, Esq.
Bar No: 036062007
290 Hackensack Street
P.O. Box 274
Wood-Ridge, NJ 07075
Phone:  (973) 610-0491
Fax:    (877) 771-2211
Email: DWefer@WeferLawOffices.com
Attorney for Plaintiff

## COMPLAINT VERIFICATION

I have personal knowledge of myself, my activities, and my intentions, including those set out in the Verified Complaint. If called on to testify I would competently testify as to the matters stated herein and in the Verified Complaint. I verify and declare under penalty of perjury under the laws of the United States of America that the factual statements in the Verified Complaint concerning myself, my activities, and my intentions arc true and correct.

Dated:   November 16, 2022

Jennifer Pieta

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: November 16, 2022         s/ Dana Wefer, Esq.

                                      Law Offices of Dana Wefer, LLC
                                      Dana Wefer, Esq.
                                      Bar No: 036062007
                                      290 Hackensack Street
                                      P.O. Box 274
                                      Wood-Ridge, NJ 07075
                                      Phone: (973) 610-0491
                                      Fax: (877) 771-2211
                                      Email: DWefer@WeferLawOffices.com
                                      Attorney for Plaintiff

                                      Attorney for Plaintiffs